Next case on the docket is New Mexico Trappers Association v. Torrez. This is 252117, and we'll hear from the appellant. Good morning, your honors. May it please the court, counsel for the state. My name is Gary Lustico. I represent the appellant trappers in this case, which are the New Mexico Trappers Association, the National Trappers Association, and Fur Takers of America. All of those associations have members that live, did trap, and would like to trap again on public land in New Mexico. The relief we seek is the reversal of the district court's determinations and remand for further proceedings. And the reason we ask that is that since April 1st of 2022, the Wildlife Conservation and Public Safety Act, which is referred to in all the briefs as the act, and I'll do so here today, has denied by its very language, the statute's very language, that appellant trappers could not trap on public land and never will qualify for the exception, regardless of whatever the rules are that may be drafted on that. And that is because the statute sets out by defining exceptions, which limit who qualifies for those exceptions, having to do with two sets of things. Generally, having to do with that you have to be a member of a tribe or a race, and you have to be trapping for a non-secular purpose. You have to be trapping for a religion, and not only a religious or ceremonial purpose, which they can't qualify for. And nobody can. That's what you said on page 23. I don't have it in front of me, but I think the quote was, the legal exemption is legally meaningless, because you point out that there are no Native American tribes that are federally recognized that have a religious duty to trap for a religious or a ceremonial purpose. That's what you say on page 23, right? Correct. We're not aware that there are. So let's say, hypothetically, that you say you have a general ban on people that can't trap, period, and you have an exception for, let's say, New Mexicans that were born on the planet Jupiter. Nobody qualifies for that. It's a fictitious name, or you can name some fictitious group. How can you have a psychological injury by not being able to trap when nobody else can? They're told by the state of New Mexico they can't trap, no matter if there is somebody else or not. There may be Natives that qualify in the future. But you said there's not, on page 23. And it's not even right, because there's not even regulations in force to enable this act to be enforced. There is not regulations in place. It's not even possible to enforce it right yet. It may be impossible to enforce that regulation because it hasn't been acted, but the statute qualifies who could ever qualify for the exception, and it says you have to be doing so as a member of a race, which the trappers can't ever change their race. Well, not to pick on you, but it does say that. It says you have to be a member of a Native American tribe that is federally recognized, so it's not any race. And the Supreme Court is pretty clear that we treat Native American status not really as a race issue, but some other kind of a factor. And I qualify my words. The statute does say that it has to be of a member of a federally, an enrolled member of a federal tribe, nation, or triablo. That's what the act says. And the clients aren't. They can't ever be those. And that, moreover, those members of the tribes that would meet that qualification have to be trapping for a religion or a ceremonial purpose. And a non-secular purpose isn't allowed. The statute, by its very word, endorses that the state favors those group of people and that purpose. But there are no such people. Well, we argue that we're not aware of any. And that goes to, it doesn't take away the sting of the statute, the psychological injury from the statute. It doesn't take away the stigma from being treated equally different. And it has to do with that issue. That's the harm to the statute. So if there are no such people, why do they need the exemption? The state must feel that there are such people. We're not saying that there absolutely, as a matter of fact, are none. We're not aware of them. So if there is a compelling purpose, and I will grant you the Supreme Court has set out certain precedent, it's cited in our cases, I'll address those today, that has to do with that states are allowed, or the federal government is allowed, some preferences. So Wilgus is a primary case that has to do with eagle feathers. And the federal government has said, we're going to protect eagles, bald and gold eagles. They're a national symbol. The availability of feathers is extremely limited. And we have to, you know, natives that are allowed under the act. So Wilgus was charged with a crime because he had those in his possession. He said, a native gave them to me. But notwithstanding, he didn't have a permit. That was a violation of law. The court in Wilgus said, because of the symbolic and limited allowance for eagle feathers, that that was a permissible limitation on who could have those. And the court also said that, I mean, the opinion goes into that the congressional trust relationship, the U.S. congressional trust relationship with natives is the very core of federal power and interest. And so they allowed an exception to limit who could have the feathers for what reason in that circumstance. The 10th Circuit in Livingston then set out a standard for state law that had to do with, it was the Museum of New Mexico and the Palace of the Governors. It's thought to be the oldest building in the nation. It's been used by local nations, tribes, rebels, since sometime in the 1600s it's thought of, that they've used it for selling their art, those type of things. And in Livingston, non-natives wanted to sell their art. And the court said, no, we have an interest. It's based on an employment preference near reservations. And because of that near exception in Livingston, it was allowed to have allotments that limited non-natives to selling their art near the museum. That was a very limited holding. There is no other holding that allows that the state has that kind of interest, generally and broadly, to simply- But why don't you wait until the rules are promulgated? Maybe they're never gonna be promulgated. They may never be promulgated. So why don't you wait and see what happens? Well, if that's the way the state can evade any judicial review on discrimination for either religion, national origin, blood quantum, base roles to be in a tribe, then the state could always discriminate. Well, you can also then sue, too. I mean, what are you doing here? Why are you taking up our time on an act that, by its own terms, isn't applicable to anybody? Or it's applicable to everybody right at this point? Nobody can trap. You're not objecting to that, correct? Yeah, we're not trying to waste your time. We feel very sincerely about this. You are not objecting to the fact that there's no trapping in New Mexico? Not in this case. We're saying that the statute... Will you file another case against the state laws prohibiting trapping? We have not filed a case against the state on trapping laws. We filed a case here. The court found there was stigma from the statute. The court found, the district court, the court found it wasn't enough. It didn't meet constitutional muster. But the limitation has to do with religion and a preference based on a category that trappers can't ever meet. I mean, it clearly discriminates them. And the state is saying there's no rules yet. But any set of rules by the wording of the statute indicates it has to have those preferences within it. It can't be generic rules. It says there will be rules with the BIA on what specifically religion and ceremony is and who is and who isn't. But there aren't any. There aren't. But any rules are going to have that in it by the statutory language. And it will never be different. So the harm has happened. So this is what the state is saying. I know what the state is saying, and I know I haven't done anything. It's a drafting mechanism. So this is public land. If it was public buses, it's clear you can't say African-Americans can't ride the bus. Clear law. There's no doubt. What the state is saying, it's OK, though, if what you do is ban everybody from riding the bus except for Caucasians, for religious and ceremonial purposes. That would be the same. I don't think that's analogous. I'm sorry. All right. Let me, uh, so I have a question about what you just said. So what if you're not wanting to ride the bus? So in other words, what if you're so? So can you sue under your answer to Judge Kelly? If you know, I have a phobia about riding the bus. I never want to ride a bus. You're in other words, you're psychological. This is why I'm asking. Your claim for psychological injury is, as I understand it, different than your stigmatic injury claim. And your psychological injury, the underlying claim is you, the state, have violated the 14th Amendment's Equal Protection Clause, and you violated the Establishment Clause. Correct. But my injury is not because I'm jealous of tribes. It's because I can't trap. That is my injury, in fact. And so my question is the second element of standing. How is your injury, in fact, your inability to trap, how is that traceable to a preference for Native Americans that hypothetically would be able to trap under this exception if there were, let's say? Well, it's traceable because the statute sets out those limitations without going through the steps of, is it at least restricted? Right, you might win on the merits, but my question is, how is it traceable? In other words, my injury, in fact, is I can't trap, or to take the equivalent of your example, I can't ride the bus. But what if that has nothing to do with the fact that Blacks can't ride the bus? What if your injury, in fact, your inability to trap, has nothing to do with the fact that other people can trap? It's a disconnect. It's not traceable. The state argues that that's all we're about. We just complain we can't trap. What we're saying, yes, there's no doubt trappers would like to trap. I mean, that's what they do, and they're limited by this act. But the exemption sets up a scheme where it prefers a specific religion or ceremony by a specific group of people. What's the difference? I thought that was your stigmatic injury claim. So, then I'll give you more time because I'm taking too much of it, but I don't understand, then, your difference between your psychological injury claim and your stigmatic injury claim. Could you just tell me briefly what the difference is? The case law sets out generally for religious discrimination, it's called psychological injury. For equal protection violations, it's stigmatic. What the district court does is say, there's some maybe psychological injury for you can't trap for economics or recreation, that type of thing. But if there could be psychological injury, because you are the establishment clause violation. But she said that's really stigmatic, and so she groups them both together. What I'm asking about you, sir, I thought these were your distinctions. So are you saying both of your claims in your mind are what the district court referred to as stigmatic injuries? That the claim is that, well, that's fine, I can't trap as long as nobody else can trap. But you're letting these other people trap. Are both of your claims essentially that, one's based on the establishment clause, one's based on the equal protection clause? You're right, it's establishment clause as the religious ceremonial portion of it. It is equal protection as to treating different people differently, because one is of a certain category that's a protected class. The courts have found native tribes, they get a different protection. And they're being treated differently just because of that, where the trappers can never meet that standard. I don't know if it matters other than the case law seems to break it down that way. So it's just that, in your point of view, it's just a terminology distinction between whether you're dealing with First Amendment or- Equal protection. Or equal protection. Correct, correct. But otherwise you're saying the concept is exactly the same. The concept's exactly the same. The case law- Stigmatic and psychological are both the same. Right. Supreme Court has seemed to set up those terms, but the issue, the harm. And the case law sets up clearly that psychological harm or stigmatic harm is an injury in fact. It goes through and sets out, Catholic League sets out that yes, if other religions are preferred, that nothing in a sense bad happens to that person. But the court still find that that's a violation of the establishment clause. It's the psychological injury. And the court finds, the district court finds, there is some. It just doesn't raise to the level without stating, well, what's the level? I mean, there isn't cases that set down if you feel discriminated against, it doesn't seem that, maybe if it's that riding the bus, but not trapping. But the harm is the same. That one group is being treated differently than another group. And the courts, or the states set out this difference, and it's that favoritism, and that they are preferring one over. So they make, in this case, for religious ceremony, you're the in group. For secular purposes, you're the out group. I think I've used up my time. I appreciate the questions. Well, because I'm at fault for that, I'm going to give you one minute for rebuttal. I appreciate that, and Your Honor, clearly not trying to waste your time. Appreciate it. You may want to adjust that. Are you saying I'm not tall? Wait, am I going the wrong way? It may just be, if you can just manipulate the- Can you hear this? Yeah, that's right. Okay, great. Because I had to think left to Lucy, right? I'm not sure how to make it go down. Good morning, Your Honors, and may it please the court. My name is Amber Fairberg, and I represent Michael Sloan, Director of the Department of Game and Fish. And today, I also argue on behalf of Attorney General Raul Torres and Game Commission Chair Richard Stump. As you've all just heard, the Wildlife Conservation and Public Safety Act banned trapping on public lands in New Mexico. The plaintiffs are trapping associations who disagree with that legislative judgment. Their disagreement, though, as the court has already noticed, is hidden in a Trojan horse as a constitutional challenge to one of eight narrow exceptions to that ban. But plaintiffs have no standing to bring that challenge, and there are four reasons why. First, their economic and recreational injury, what we just heard when my colleague got up and said, our members have trapped, and they can't trap anymore, and they would trap again if they were allowed to, is neither traceable to the challenged provision, nor redressable by its invalidation. Second, their so-called stigmatic or psychological injury does not rise to the level of an injury, in fact. In fact, the district court did not find there was a stigmatic injury, but found that stigma is cognizable in theory, but that their allegations do not rise to the level of injury, in fact. And that was the correct judgment. Third, plaintiff organizations lack associational standing, because their purpose is not germane to the interests they seek to protect, particularly the religious or civil rights interests that they are seeking to protect through their stigmatic claim. Would it be different if the department was in the process of coming up with regulations right now? Your Honor, that gets to the fourth point. That gets to the fourth reason, Your Honor, which is ripeness. The case is not ripe for review because there haven't been regulations. And I think the fact of the matter is that absent those regulations, absent as Judge Bacarach pointed out earlier, a group of people who might take advantage of those regulations, of which plaintiffs are not aware. Certainly nobody has trapped under the exception to date. No one has asked the department to promulgate regulations. In the absence of those things, this adjudication would necessarily require the court to engage in speculation. And yes, Your Honor. Well, I didn't mean to talk over you. Go ahead and finish your thought. Well, that was a bit at the end of my thought. What I was going to move on to is the traceability and redressability issues. Okay, well before you do that, I might ask you a question. So now his argument is that the statute itself creates this inherent discrimination. So let me ask you a hypothetical question. What if New Mexico had said, you cannot trap, generally, there is an exception that, you know, subject to approval by the Secretary of State for anybody that's Jewish? Well, okay, maybe it's not right, but there is an inherent statutory discrimination, and that's what he's arguing. Well, I think, Your Honor, there are a couple of answers to that question. First, that hypothetical would still fail for associational standing on plaintiff's behalf. Because they're not the right group to go and say, my religious liberties, my equal protection, my religious liberties are being, their purpose. I don't want to get astray, but my question about associational standing is, well, it's a secular group. And his whole argument about the establishment clause is that there's a preferential treatment for a religious group as opposed to a secular group. And so I'm not really sure about the logic of your associational standing argument, but let's put that aside. Okay, let's set that aside. And so let me make sure I understand your question, which I think the hypothetical would be a fundamentally different statute. Why? That statute, apart from, as Your Honors have already stated today, the preference and accommodation for a limited accommodation for members of a federally recognized tribe. That's a political status. That's a political status that the Supreme Court has recognized, that this court in Livingston and the district court that it affirmed recognized also with regard to New Mexico's interest in that tribe. So I think the purely religious purpose versus the Indian preference is different, but there's another difference. That's a merits argument though, isn't it? Before you move to your second answer, in your first argument, more on the merits. It's an accommodation, therefore it's not discriminatory, but for an injury in fact, it either is or isn't. Right, and so what's happening there, I think that hypothetical has stronger, will you say the hypothetical again, Your Honor, I want to make sure I'm answering exactly. You can't wrap general ban exception unless you are Jewish or pick your religion. I said Jewish because I'm Jewish, subject to approval by the Secretary of State. So your argument, okay, well it's not right, but there is an inherent preference for a religious group that may or may not be justified based on past discrimination, but that's a merits argument. So my question is, why isn't he right that there's an inherent statutory discrimination, whether or not it's been implemented or not. The injury, in fact, is the pure statutory differential treatment between his group and Native Americans. I think, Your Honor, the reason that there's no standing in that circumstance, as in this, well, the difference, although it doesn't sound like there's a difference because in your hypothetical there still haven't been rules promulgated, etc. But unequal treatment, as this court has previously stated in Citizen Center, unequal treatment by itself can be an injury. But that unequal treatment needs to be concrete. It needs to be happening. There needs to be actual unequal treatment. This isn't that case, apart from the idea that there's this written statute that carves out this exception. And I think it's important here to recognize the statutory structure, to recognize the, because plaintiffs seek to invert the statute on its head. That is, if it says Native Americans get to trap, that's not what it says. It says nobody traps. Here are eight exceptions. It's one of eight. Scientific research, etc. There's others, depredation. So it's important to recognize the purpose of the statute, which is a ban, which is a general grievance. And our Supreme Court has said that if you're in the general group, subject to a general ban, generally complaining about what somebody else gets to do, what someone else gets to do, is not sufficient injury to confer standing. That's a quarrel with the legislative branch. But beyond that, I think the reality here is, and this does get a little bit into the merits, but I want to address it. The reality here is that what we're talking about is not only Jewish people get to ride the bus. That's not what's happening. Instead, what we have is, as recognized in Livingston, is a deep historical connection. Well, gosh, on this land and these people that predate statehood, if there's gonna be anybody who might ceremonially trap, we're gonna carve out an accommodation for that. And what we know is that an accommodation is a recognition of someone else gets to do something that doesn't confer standing necessarily on everyone else who doesn't get to do it. Plaintiffs are in the general group. Plaintiffs are like every other New Mexican, not just every other New Mexican, apart from federally recognized tribal members. They're like every New Mexican, period. Because as they have said, they have not identified, and we are at a point in litigation, your honors, where we have to take what they say at face value. These are their allegations. They say there's no one who qualifies for this exception. In the absence of a real opportunity for unequal treatment, let alone occurring unequal treatment, there can be no stigma. There can be no psychological injury. And I do want your honors to get a little bit into here, because I think this got a little bit mixed up earlier. But there are two potential types of injury, and the case law does treat them differently. There's the potential for stigmatic injury. That's when the state has disparaged someone, insulted someone, or to use this court's language out of AWAD, has expressly condemned them. I mean, it's what we all know on a colloquial basis, what it means to be stigmatized. It means to have a red mark. You're distinguishing between stigmatic injury and psychological injury on some basis other than what the appellant used, which was depending on whether the claim was a, which constitutional claim was underpinning the argument. You're saying that's not the difference. Correct. You think there's an intrinsic difference between stigmatic and psychological injury. Absolutely. And I must say, I'm kind of, I think I'm in agreement with some of the other questions about, I don't quite get that difference. Well, the way I understand it, Your Honor, and honestly, it's a murky area. But the way I understand it, and the way it makes sense in my own brain, is that it just based on cases like AWAD, Catholic League out of the Ninth Circuit, is that stigma is an express condemnation. And I think that can happen in an establishment clause or in equal protection. But there's no condemnation in this statute whatsoever. No.  No, no. In fact, the statute doesn't- If stigma requires condemnation, then that's just irrelevant to the case before us. Exactly. There is no injury in fact. There is no injury in fact, because the statute does not speak to, does not speak of, does not recognize plaintiffs whatsoever, let alone condemn them or call them out. To the extent that the ban itself expresses a disagreement with an activity that's important to them, well, they didn't challenge the ban. They didn't challenge the ban. They're here on this one exemption. And standing asks us, let's look at the challenged conduct. So that's stigma. There is no injury in fact on stigma. Psychological injury, Your Honor, I see coming out more in the establishment clause case. Psychological injury occurs under establishment clause by witnessing or being exposed to some state sponsored religious conduct. So we see City of Bloomfield. We've got the Ten Commandments or under the Supreme Court case, Santa Fe Independent Schools. Over the loudspeaker, there's prayer coming at you. Someone is experiencing a state sponsored religious activity. That's not happening here. That's what I understand the case is to say psychological injury is. And stigma in psychology, in my mind, and the way my read of this court's jurisprudence on the issue, they are distinct. They are not something that just runs into each other. So you're arguing, look, this aside this case and the fact there's no injury. But do we ever get there if we say that it's premature or it's moot or it's not ripe because nothing is happening yet? You get there for all the reasons independently. These are all independent bases to affirm. You don't need to find more than one. The fact that it's not ripe, that there are not regulations promulgated, absolutely, it's not ripe. Article three says we don't issue advisory opinions. We certainly don't speculate as to future government conduct. And so it's not right, period. But on the other hand, and completely separately, if there's no stigmatic or psychological harm, which plaintiffs have not shown. They have not shown express condemnation. They have not shown being exposed to some religious conduct. In fact, by their own admission, they couldn't be. Because there is no one who would be exercising this kind of conduct. There is no injury, in fact, on that claim. And that goes for standing. But not only that, one thing we haven't talked about is their core grievance. The reason they're here. And they're here because they can't trap on public lands. They're not here because a member of a federally recognized tribe maybe could someday. They're here because their members can't trap. I thought that until today, but I think what you have just said, and I think what your colleague has just said is, no, his complaint is not that they're unable to trap. It's this unequal treatment that is attributable to the violation of the Establishment Clause and the Equal Protection Clause. Right? So I thought you had said, and tell me if I'm wrong, because I'm really still trying to figure out what the difference, if any, is between the two claims, is I thought you had just got through saying that his claim is that these trappers are unhappy that there's this other group that is able to trap that's an unequal violation of equal protection. And they're not in the favored group, and so there is a violation of the Establishment Clause. But that, as your understanding of both the psychological and stigmatic claims are, that neither are attributable as inability to trap. It's based on the fact that they're in a disadvantaged group, right? The way I conceive of it, Your Honor, and I hope this helps, and please let me know if I'm answering your question. I realize I'm running out of time, is that they have two injuries. The one pled in their complaint is a recreational, economic, and aesthetic injury. They can't trap. That's the one that exists on the pleadings and that has been briefed before the court. That's in addition to the one that arose in the context of briefing the motion to dismiss below, which is the stigmatic and psychological harm. As I've said, the stigmatic and psychological harm doesn't exist, and therefore they don't have standing because there's no injury in fact. It's a generalized grievance aimed at the legislature. The recreational aesthetic harm, my colleague stood up and said, and if I could just have a moment to finish, Your Honor. My colleague stood up and said, my members used to trap, they want to trap, they can't trap. That's that injury, and plaintiffs, I'm sorry, defendants concede. Absolutely, that's an injury in fact. It just is not traceable to the provision they challenge. And of course, they can't and they don't challenge the underlying ban, because there is no fundamental right to trap, and the state has police power to go ahead and regulate that. So if the court today were to say, you know what, the exemption is unconstitutional and it is invalidated, plaintiffs would be in the same position. They still wouldn't be able to trap. That first thing my colleague said when he got up here would be identical tomorrow as it was yesterday. And for those reasons, Your Honors, on both the stigmatic, psychological, and the recreational aesthetic and economic injuries, Plaintiffs lack standing, and I ask that the court affirm, unless the court has any other questions. Thank you. Thank you, Your Honor. Thank you. I have brief time to cover a lot of ground that was raised. We're not trying to waste anybody's time, certainly not yours. And I'm not arguing with you about what we say on 23. I'd ask you to go look at it carefully. We are not saying there simply isn't anybody. We're saying for like cases like Valley Forge, it has to be within your community. That there could be preferences for certain reasons for Indian nations and that type of thing. But in this case, there's no history like the Palace of the Governors. And that's the point that we're raising with that. Not that, the difference, the stated difference. And I would ask you on page six, page 13 of document 49 of our reply, that in the Catholic League, the US Supreme Court says very specifically, the psychological consequence of exclusion or denigration on a religious basis within the political community is actionable harm. If you don't have that yet. The statute says we do, Your Honor. The rules- Just because it's in a page, it may happen, may not ever happen. It's not right. And you're gonna have to convince me that it is right in order to review it. We don't do advisory opinions. Totally understand that, Your Honor, and I'm not asking you to do that. The statute today says it could say, strike the tribe, say Jewish. With your example. It says that only if regulations are adopted. There are no regulations. But the regulations can never apply to us based on the wording of the statute. We can never qualify. There's no possible way, because we don't meet that. But that's not mine. I appreciate that, and what you think matters more than me, I think it's right, because this isn't just about trapping. Go back to the microphone. Sorry, Your Honor. This isn't just about trapping. The state has done a very good job of trying to say, because we're trapping associations, all we care about trapping. These are also American people that have the right not to have the government of the state they live in endorse a religion that is put above a non-religion. And that's an establishment clause, and that causes a psychological harm. That's our position on that. We appreciate your time. Do we have to buy the argument that trapping is a religion, or is it sufficient to say that the religion component comes in through the exception for the Indians? Correct. In fact, trapping is primarily a secular activity. But the government can't endorse a religion over another religion, or endorse a religion over a secular religion. They can't endorse at all. We set out those cases in our briefs, both the initial and the reply. It's just as wrong to pick between religions and endorse one over another as it is, or just as wrong, to pick between and endorse a religion over a non-religion. That's our point. Thank you. Thank you. Thank you. The reason I mention that is I was coached to make sure that we record it accurately. All right, thank you very much. Well presented by both sides. This matter is submitted.